NATIONAL CITY BANK OF INDIANA
and National City Home Loan Services,
Inc., Appellants/Cross–Appellees

v.

Albert ORTIZ, Appellee/Cross–
Appellant.

In re Albert Ortiz, Relator.

Nos. 14–10–01125–CV, 14–10–01262–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 16, 2013.

Kari Lynn Robinson, Kristen Brauchle, Joel W. Mohrman, for Appellants/Cross–Appellees.

Michael C. Donovan, for Appellee/Cross–Appellant.

Panel consists of Justices FROST, BROWN, and CHRISTOPHER.

## OPINION ON REHEARING

TRACY CHRISTOPHER, Justice.

We withdraw our opinion and vacate our judgment of November 20, 2012; grant appellee's amended motion for rehearing in part and deny it in part; deny appellants' motion for rehearing as moot; and on rehearing, issue this opinion and its accompanying judgment.

In this opinion on rehearing, we address cross-appeals and a mandamus petition arising out of the foreclosure of a residential property. The borrower, Albert Ortiz, sued the bank and its mortgage servicer for a variety of claims including wrongful foreclosure, breach of contract, negligence, trespass to real property, trespass to personalty, and conversion. The bank counterclaimed to recover on the note and to judicially foreclosure the deed-of-trust lien, and the borrower responded that the bank's representative had signed letter agreements waiving and releasing the bank's claims. The trial court granted summary judgment in favor of the borrower on his wrongful-foreclosure claim, set aside the foreclosure sale, and restored title in the property to the borrower. The trial court also granted partial summary judgments allowing the bank to pursue claims under the deed of trust, but not to pursue claims arising from the promissory note. After a jury trial, the trial court rendered judgment in the borrower's favor on his claims for breach of contract, trespass to personalty, and gross negligence, and ruled against the bank and mortgage servicer on all of their claims, instead declaring that the borrower had no further obligations under the note and deed of trust.

The effect of the trial court's judgment was to award the home to the borrower free and clear of all debt on this loan (on which he had repaid none of the $472,000 principal) and to additionally award him

damages and attorney's fees in the amount of $497,600.

We conclude that the trial court erred in (a) granting summary judgment in Ortiz's favor on his argument that the bank waived or released its claims, and in incorporating the erroneous interlocutory rulings into the final judgment; (b) denying the bank's claim for judicial foreclosure; and (c) declaring that the note and deed of trust are "fully, completely and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing." The trial court did not err, however, in (d) applying the one-satisfaction rule to limit the damages awarded to Ortiz, (e) failing to render judgment that the bank's judicial-foreclosure claim was time-barred, or (f) denying Ortiz's motion to expunge the notice of lis pendens. In light of our disposition of these issues, we deny Ortiz's petition for a writ of mandamus, affirm the judgment in part, reverse it in part, and remand the case for retrial of the bank's claim for judicial foreclosure, which we conclude is not time-barred, and the breach-of-contract claims between bank and Ortiz.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2004, Albert Ortiz, the plaintiff below, purchased a house ("the Birdsall Property" or "the Property"), and financed it by executing a promissory note ("the Note") secured by a deed of trust ("the Deed of Trust"). At all material times, defendant National City Bank of Indiana ("National City") was the owner and holder of the Note and the beneficiary of the Deed of Trust, and defendant National City Home Loan Services, Inc. ("HLS") was the mortgage servicer.[1]

Under the terms of the Deed of the Trust, Ortiz was required to maintain insurance on the home. If he failed to do so, then National City was permitted to insure the Property and treat the amounts expended for insurance as additional secured debt. Although Ortiz's privately purchased insurance was still in effect at this time, HLS sent a notice to Ortiz on September 1, 2004 that it had insured the Property and charged his escrow account for the annual premium shown on the policy it enclosed with the notice; however, HLS sent the letter to the wrong address. The premium on the policy enclosed with the letter was $10,903.00; with taxes and surcharges, the total amount charged was $11,442.70. As Ortiz later testified, HLS (a) applied Ortiz's mortgage payments to this insurance purchase, and in a telephone conversation with Ortiz, demanded that he make additional payments to cover the resulting deficiencies; (b) made a negative report to a credit bureau based on the erroneous conclusion that Ortiz had not paid all that was due; and (c) learned of its mistake and agreed to correct the negative report to the credit bureau, but failed to do so.

Ortiz consistently paid late or missed payments. On November 1, 2005, HLS mailed Ortiz a notice of its intent to accelerate the loan, and on December 21, 2005, HLS notified Ortiz by mail that it had accelerated the loan, but these letters also were misaddressed. During this same time period, HLS caused the locks at the home on the Property to be changed, and although Ortiz did not reside there, he

---

1. In their notices of appeal and documents filed in this court, the parties identify "HLS" as "Home Loan Services, Inc.," but no such corporation is identified in the parties' pleadings in the trial court or in the trial court's judgment. In Ortiz's pleadings "HLS" is identified as "National City Home Loan Services, Inc. d/b/a First Franklin Loan Services." In the trial court's judgment, "HLS" also is identified as "National City Home Loan Services, Inc."

kept personal property there that was never returned to him.

At the request of Ortiz's attorney, HLS faxed the misaddressed documents concerning acceleration of the loan to Ortiz's attorney on January 13, 2006. By that time, a foreclosure sale had been scheduled for February 7, 2006. Although that sale did not take place, Ortiz continued to miss payments, and the Property was posted for a foreclosure sale to occur on June 6, 2006. That morning, Ortiz filed a lawsuit against National City and HLS (collectively, the "Bank Parties") to enjoin the sale. The trial court denied Ortiz's request for a temporary restraining order, and National City purchased the Property.

Less than three weeks later, Ortiz's attorney Michael Donovan bypassed HLS's counsel and contacted an HLS employee directly, asking the employee to execute a proposed letter agreement that Donovan had drafted. The employee was not an attorney, and he forwarded the letter to another non-attorney employee who signed the letter agreement as an "Authorized Representative" of HLS and of National City's predecessor. Two weeks later, Donovan again bypassed HLS's attorney and sent a proposed amendment to the letter agreement to the employee who had signed the first letter. The employee signed and returned the amendment as the authorized representative of National City. In these two letters ("the Letter Agreements"), National City stated that it "releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of [Ortiz], in connection with the [Property], including the note and deed of trust associated with such property."

Two months later, Ortiz filed another suit against the Bank Parties. Over the course of the litigation, he amended his petition eight times to add more parties and causes of action. As relevant to the issues presented here, he ultimately asserted that National City was liable to him for wrongful foreclosure and breach of the Deed of Trust, and that both of the Bank Parties were liable for negligence, conversion, trespass to realty, and trespass to personalty. Ortiz also requested a declaratory judgment that (a) he owes no further debt whatsoever to National City under the Note, the Deed of Trust, or otherwise, even if the trial court were to set aside the foreclosure sale; (b) through the Letter Agreements, National City waived or released its claims against Ortiz concerning his indebtedness under the Note and the Deed of Trust; and (c) the Letter Agreements do not fail for lack of consideration. In response to Ortiz's allegations regarding the Letter Agreements, National City raised the affirmative defense that the purported agreements were unsupported by consideration. National City also asserted counterclaims for breach of the Note and for judicial foreclosure of its lien on the Birdsall Property. In addition, National City asked for declaratory judgment that (a) the Letter Agreements are void because Ortiz's counsel obtained them by directly contacting a party that he knew was represented by counsel, thereby violating Texas Disciplinary Rule of Professional Conduct 4.02; and (b) if the foreclosure sale is void, then National City's deed-of-trust lien is valid, the debt is revived, and National City may proceed with a new foreclosure.

The trial court granted a partial summary judgment in Ortiz's favor as to his wrongful-foreclosure claim. In an order signed October 28, 2008, the trial court set aside the trustee's deed conveying title in the Property to National City and ordered title in the Property restored to Ortiz. That ruling is not challenged in these proceedings.

In a number of different explicit and implicit rulings, the trial court addressed

the parties' arguments about the validity and effect of the Letter Agreements. In April 2009, the trial court granted Ortiz's motion for partial summary judgment on "Defendants' counterclaims" concerning the Letter Agreements. In June 2010, the trial court ruled again on the same summary-judgment motion and on an additional summary-judgment motion concerning Ortiz's claims and affirmative defenses on the same subject. In the June 2010 ruling, the trial court stated "findings" that the Letter Agreements (a) "lack consideration, and accordingly are not valid contracts to be enforced for all purposes; and (b) contain a "valid agreement to release/waive [Ortiz's] obligation on the Note." The trial court concluded that the Bank Parties were "to take nothing for any claim arising from the Note" but were "entitled to pursue claims as to the Deed of Trust."

Despite these rulings construing the effect of the Letter Agreements as a matter of law, the trial court submitted a question to the jury for a finding of fact concerning the meaning of the Letter Agreements. The jury found in pertinent part as follows:

- In the Letter Agreements, neither National City nor HLS "validly agree[d] that [Ortiz] would receive ownership and possession of the [Property] without obligation for further payments on the Note and that [HLS] and [National City] would not pursue any claims, lawsuits and/or obligations that they could have asserted against [Ortiz]."
- Ortiz and National City each materially breached the Deed of Trust.
- National City breached the Deed of Trust first.
- National City's breach caused Ortiz damages of $100,000 in loss of rental income for his loss of use of the Property.
- HLS trespassed upon the Property, causing Ortiz damages of $77,000 in

loss of rental income for his loss of use of the Property.

- HLS's negligence proximately caused Ortiz the loss of personal property having a fair market value of $10,000.
- HLS converted Ortiz's personal property having a fair market value of $1,500.
- HLS committed trespass upon personalty, causing Ortiz's loss of personal property having a fair market value of $1,500.
- HLS was grossly negligent and should be assessed exemplary damages of $100.
- $400,000 is a reasonable fee for the necessary services of Ortiz's attorneys for preparation and trial of the case. The jury failed to assess any appellate attorneys' fees.

Both Ortiz and the Bank Parties filed motions in which they asked the trial court to disregard certain jury findings and to grant judgment on the verdict in other respects. Although the jury rejected Ortiz's contention that National City agreed not to pursue any claims concerning his indebtedness, the trial court granted Ortiz's motion to disregard the finding and explicitly incorporated the interlocutory summary judgments into the final judgment. The trial court impliedly granted the portion of the Bank Parties' motion in which they argued that, under the one-satisfaction rule, Ortiz was not entitled to recover multiple damage awards for each injury. The trial court also impliedly granted the portion of the Bank Parties' motion in which they argued that they were entitled to a settlement credit of $12,500, representing the amount paid by their alleged agent, Keystone Asset Management, Inc., to settle Ortiz's claims against it.

After applying the settlement credit, the trial court rendered judgment that Ortiz

recover actual damages $87,500 from National City and $10,000 from HLS; exemplary damages of $100 from HLS; attorneys' fees of $400,000 from National City; pre- and post-judgment interest; and costs. In addition to the monetary awards, the trial court declared that the "Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust," and that the Substitute Trustee's Deed of June 6, 2006 "resulting from Defendants' wrongful foreclosure of the Property[ ] is set aside, rescinded, deemed null and void and of no effect."

Both Ortiz and the Bank Parties have appealed.

On the same day that it rendered final judgment, the trial court signed an order denying Ortiz's motion under Texas Property Code section 12.0071 to expunge a notice of lis pendens filed by the Bank Parties. Ortiz filed an original proceeding in this court seeking mandamus relief regarding this order. We consolidated the mandamus proceeding with the appeal.

## II. ISSUES PRESENTED

In their first issue, the Bank Parties contend that the trial court erred in granting judgment that Ortiz had no obligation on the Note and Deed of Trust, because the Letter Agreements are not enforceable. They argue in their second issue that Ortiz's prior breach of the Deed of Trust bars him from recovery for any alleged breach by National City; thus, the trial court erred in rendering judgment for Ortiz for breach-of-contract damages and attorney's fees.[2]

In his cross-appeal, Ortiz asserts that the trial court reversibly erred by (a) fail-

ing to award Ortiz appellate attorney's fees against National City; (b) failing to award Ortiz the cumulative amount of damages that the jury assessed against HLS under different theories of liability for the same injuries; (c) applying a $12,500 settlement credit to the amount of Ortiz's damages against National City; and (d) failing to grant Ortiz judgment on his statute-of-limitations defense to National City's judicial-foreclosure claim.

In his original proceeding, Ortiz additionally contends that the trial court clearly abused its discretion in denying his motion to expunge the Bank Parties' notice of lis pendens.

## III. CLAIMS AGAINST NATIONAL CITY

### A. Did the Bank Parties Unambiguously Renounce Any Rights to Further Payment or Foreclosure If the June 2006 Foreclosure Were Reversed?

In their first issue, the Bank Parties contend that the trial court erred in rendering judgment that Ortiz has no obligation on the Note and the Deed of Trust. In making this argument, they effectively challenge the legal sufficiency of the evidence on which the following rulings were based: (1) the interlocutory partial summary judgment of April 9, 2009; (2) the trial court's interlocutory order of June 14, 2010 granting in part and denying in part the parties' cross-motions for partial summary judgment; (3) the trial court's ruling, incorporated in the final judgment, granting in part and denying in part the parties' cross-motions for entry of judgment and to disregard certain jury findings; (4) the denial of the Bank Parties' motion to modify the judgment; (5) the denial of their motion for judgment notwithstanding the verdict; and (6) the denial of their motion for new trial.

2. HLS appealed the trial court's judgment, but it has not assigned any error or presented any argument challenging the trial court's money judgment against it.

When reviewing the legal sufficiency of the evidence, we apply the same standard of review regardless of the procedural vehicle used to raise the issue. *See City of Keller*, 168 S.W.3d at 823. That is, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that supports it. *Id.* at 822. We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827.

**1. The trial court erred in granting Ortiz partial summary judgment has to "any claim arising from the Note mentioned in the Letter Agreements."**

▪ A party who has raised an affirmative defense and moves for summary judgment on that basis bears the burden of proving each essential element of the defense. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex.2012). Here, the Bank Parties asserted claims for amounts due under the Note and the Deed of Trust, to which Ortiz raised the affirmative defenses of waiver and release. *See* TEX.R. CIV. P. 94 (listing "waiver" and "release" as separate affirmative defenses). The Bank Parties then asserted an additional counterclaim in which they asked the trial court to "declar[e] the legal significance of the Letter Agreements." They asserted that the Letter Agreements were "null and void *ab initio* for failure of consideration and/or due to the fraud committed by Donovan, Ortiz's attorney, in obtaining the Letter Agreement[s]." They additionally argued that by retaining the benefits of the Letter Agreements, Ortiz ratified the foreclosure.

In the first summary-judgment motion at issue in this appeal, Ortiz sought judgment on the following grounds:

(a) In the Letter Agreements, the Bank Parties expressly waived all claims against Ortiz;

(b) The Bank Parties' claims for declaratory judgment were impermissible attempts to recast affirmative defenses as counterclaims;

(c) No evidence supported the assertion that Ortiz ratified the foreclosure;

(d) Failure of consideration did not render the waivers void because waivers require no consideration;

(e) With respect to the Bank Parties' assertion that Donovan's alleged fraud in obtaining the Letter Agreements rendered those contracts void, Ortiz argued that

(i) a violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action, and

(ii) the Bank Parties could not establish that they relied on Donovan's failure to inform them of the lawsuit, because their attorney's actual knowledge of the lawsuit was imputed to them, and because the lawsuit was filed as a matter of public record.

(f) In a supplement to the summary-judgment motion, Ortiz asserted that the evidence conclusively showed that National City breached the Deed of Trust, and thus, National City was liable for breach-of-contract damages and attorney's fees in an unspecified amount.

The Bank Parties responded that "[t]he Letter Agreements represent a release of liability which requires consideration," and that "[t]he only consideration possible for the Letter Agreements would be [Ortiz's] ratification of the foreclosure." They argued that because Ortiz moved to set aside the foreclosure,[3] there was no

---

**3.** Two years after the Letter Agreements were signed, the trial court set aside the sale be-

cause the required foreclosure notices were sent to the wrong address.

consideration. The Bank Parties had stated in their pleadings that the Letter Agreements were ambiguous, and although they denied in their summary-judgment response that the Letter Agreements were ambiguous, they nevertheless argued that if the agreements were ambiguous, then the ambiguity should be construed against Ortiz because his attorney drafted the letters. In addition, they argued that because Ortiz circumvented the Bank Parties' counsel in violation of the Texas Disciplinary Rules of Professional Conduct in order to obtain the Letter Agreements, there was at least a question of fact as to the parties' intentions. As for Ortiz's breach-of-contract claim, the Bank Parties asserted that as a result of Ortiz's repudiation and material breach of contract by failing to make payments when due, they were discharged from performing under the contract. They further asserted that Ortiz failed to plead or prove damages from the alleged breach.

In April 2009, the trial court granted Ortiz's partial summary-judgment motion without stating the grounds for the ruling; however, the trial court allowed the Bank Parties to amend their pleadings to assert claims for all amounts due "under the Deed of Trust." Ortiz then moved for summary judgment again, arguing that the Letter Agreements were express waivers of all claims against him, and that at the time the Bank Parties executed the agreements, they were aware of Ortiz's lawsuit challenging the foreclosure. The Bank Parties again asserted that the Letter Agreements were releases that were unenforceable due to the absence of consideration, or alternatively, that the consideration for the releases was Ortiz's ratification of the foreclosure.

On June 14, 2010, the day before the start of the jury trial in this case, the trial court issued an order providing in pertinent part as follows:

The Court has reviewed the following pleadings: Defendants' Motion for Partial Summary Judgment on their Declaratory Judgment Claim and Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims and as to Plaintiff's Declaratory Judgment Claim. After review of the foregoing pleadings, all responses, and arguments made during the Thursday June 3, 2010 pre-trial conference[, t]he Court enters the following findings and Orders:

Both Motions are Granted in Part and Denied in Part.

The Court finds,

1. That the Letter Agreements making basis [sic] of the motions lack consideration, and accordingly are not valid contracts to be enforced for all purposes.

2. That the portion of the afore-mentioned Letter Agreements concerning the Note on the subject property is a valid agreement to release/waive Plaintiff's obligation on the Note, under the tenants [sic] of Texas Business and Commerce Code § 3.604 and as of the date of the Letter Agreements.

It is ORDERED, that [the Bank Parties] are entitled to take nothing for any claim arising from the Note mentioned in the Letter Agreements.

It is ORDERED, that [the Bank Parties] are entitled to pursue claims as to the Deed of Trust on the subject property.

The basis for the trial court's ruling is stated in its "findings." As we previously have explained, "If summary judgment is proper, there are no facts to find and the legal conclusions have already been stated in the motion and the response." *Golden v. McNeal,* 78 S.W.3d 488, 495 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (citing *IKB Indus. (Nigeria) Ltd. v. Pro–Line*

*Corp.,* 938 S.W.2d 440, 441 (Tex.1997)). Thus, "[t]he trial court should not make, and the appellate court cannot consider, such findings and conclusions in connection with a summary judgment." *Id.* Here, however, the trial court stated in its final judgment "that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment." In light of the pleadings requesting a declaratory judgment on the legal effect of the Letter Agreements, we construe the trial court's "findings" incorporated into the final judgment as the requested declaration.

■ Summary judgments may only be granted upon grounds expressly asserted in the summary-judgment motion. TEX.R. CIV. P. 166a(c); *G & H Towing Co. v. Magee,* 347 S.W.3d 293, 297 (Tex.2011) (per curiam). Here, however, the trial court ruled based on grounds that were not properly before it. Thus, we conclude that the trial court erred in granting Ortiz's motions for summary judgment concerning the Bank Parties' claims under the Note because the rulings were not supported by grounds raised in the motions.

**a. The trial court erred in granting partial summary judgment on a statutory ground that was not encompassed in Ortiz's summary-judgment motions.**

■ At a pretrial conference on June 3, 2010, less than two weeks before trial, Ortiz argued for the first time that the Letter Agreements were governed by a provision in this state's codification of the Uniform Commercial Code. During the hearing, Ortiz argued that the Letter Agreements were enforceable even in the absence of consideration because Texas Business and Commerce Code section 3.604 provides that "[a] person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument ... by agreeing not to sue or otherwise renouncing rights against the party by a signed record." TEX. BUS. & COM.CODE ANN. § 3.604(a)(2) (West Supp.2012). No such statutory grounds for summary judgment were presented in his written summary-judgment motions. Although Ortiz argues on appeal that this basis for judgment was properly before the trial court based on the waiver arguments presented in his summary-judgment motions, those arguments were based solely on the common law, as can be seen by the authorities he cited.

Ortiz argued in his summary-judgment motions that the Letter Agreements were express waivers for which no consideration was required. In support of this position, he cited cases showing that, under the common law, waiver can be express or can be established through a parties' actions. *See, e.g., Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.,* 1 S.W.3d 108, 111 (Tex.1999) (per curiam) ("Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law."); *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643–44 (Tex.1996) (explaining that although "[w]aiver ordinarily is a question of fact," it becomes a question of law when "the facts and circumstances are admitted or clearly established," and holding that testimonial admissions proved waiver as a matter of law); *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987) (explaining that "the waiver of a condition precedent may be inferred from a party's conduct").

■ Although Ortiz characterized the Letter Agreements as express waivers for which no consideration was required, the parties were already in litigation with one another; thus, Ortiz was asking the trial court, in effect, to treat the Letter Agreements as releases. A release is a writing providing that a duty or obligation owed to

one party to the release is discharged immediately. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.,* 955 S.W.2d 120, 127 (Tex.App.-Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Fire Ins. Co.,* 20 S.W.3d 692 (Tex.2000); RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993). None of the grounds expressly presented in Ortiz's summary-judgment motions or replies addressed the Bank Parties' summary-judgment responses that the Letter Agreements are releases for which consideration is required. *See U.S. Fire Ins. Co. v. Republic Nat'l Life Ins. Co.,* 602 S.W.2d 527, 529–30 (Tex.1980) (release requires consideration); *Torchia v. Aetna Cas. & Sur. Co.,* 804 S.W.2d 219, 223 (Tex.App.-El Paso 1991, writ denied) (same); *Leonard v. Texaco, Inc.,* 422 S.W.2d 160, 165 (Tex. 1967) (settlement agreement requires consideration). *See also McLernon v. Dynegy, Inc.,* 347 S.W.3d 315, 335 (Tex.App.-Houston [14th Dist.] 2011, no pet.) ("Generally, a contract must be supported by consideration to be enforceable."). *Cf. Pate v. Eversole,* No. 14–03–00250–CV, 2004 WL 582319, at *1 n. 1 (Tex.App.-Houston [14th Dist.] Mar. 25, 2004, pet. denied) (mem. op.) (settlement agreement concerning amount due under promissory note was supported by consideration in the form of a promise to postpone the foreclosure sale). In particular, Ortiz did not contend that there is a statutory exception to the common-law rule that a release requires consideration.

The common-law arguments in Ortiz's motion cannot support summary-judgment based on the Uniform Commercial Code because the U.C.C. "preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.'" *AMX Enters., Inc. v. Bank One, N.A.,* 196 S.W.3d 202, 207 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) (quoting TEX. BUS. & COM.CODE ANN. § 1.103 cmt. 2). If, as Ortiz belatedly argued, section 3.604 rendered the Letter Agreements enforceable in the absence of consideration, then that provision conflicts with the common law that a release requires consideration. We then could not read Ortiz's motion for summary judgment based on the common law to encompass an argument that he is entitled to judgment based on a statute that preempts the common law. On the other hand, if section 3.604 does not apply to releases when, as here, claims between the parties are being actively litigated, then the statute and the common law do not conflict because the statute does not apply at all. Ortiz then would be not entitled to summary judgment based on the common law because there was no consideration for the release.[4]

---

4. In his responsive appellate brief, Ortiz contends there is a legal presumption that a written agreement was supported by consideration, and thus, the Bank Parties bore the burden to respond to the summary-judgment motion with evidence rebutting the presumption. This is incorrect. As the summary-judgment movant, Ortiz bore the burden in the trial court to establish his right to summary judgment as a matter of law. Because the Bank Parties pleaded the lack of consideration, Ortiz could not prove his right to judgment as a matter of law unless he conclusively established that the Letter Agreements were supported by consideration or that no consideration was required. *See Brocail v. Detroit Tigers, Inc.,* 268 S.W.3d 90, 109 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (movant for traditional summary-judgment is required to disprove allegations pleaded by non-movant that would defeat summary judgment). On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999).

**b. The grounds expressly presented in the motions also do not support summary judgment.**

■ Because the Letter Agreements are ambiguous, we also cannot affirm the summary-judgment rulings based on the grounds expressly raised in the summary-judgment motions. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996) (explaining that even when the trial court identifies the basis for its summary-judgment ruling, the appellate court may consider other summary-judgment grounds that have been preserved for review).[5] When we interpret a written contract, "our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l,* 355 S.W.3d 655, 661 (Tex.2011) (orig. proceeding) (per curiam). To understand the parties' intent as expressed in the agreement, it is essential that courts examine the contract as a whole in light of the circumstances present when the contract was entered. *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.,* 352 S.W.3d 445, 450, 451 (Tex.2011); *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 451 (Tex.2008) (per curiam); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996)). No single provision is given controlling effect; instead, we consider all the provisions in all parts of the contract. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F. Distribs., Ltd.,* 165 S.W.3d

310, 312 (Tex.2005) (per curiam); *U.S. Denro Steels, Inc. v. Lieck,* 342 S.W.3d 677, 682 (Tex.App.-Houston [14th Dist.] 2011, pet. denied). If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous. *XCO Prod. Co. v. Jamison,* 194 S.W.3d 622, 627 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). A contract is not ambiguous if it can be given a certain or definite meaning as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex.2003). The determination that a contract is or is not ambiguous is decided by the court as a matter of law. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996).

After reviewing the express language of the Letter Agreements in light of the circumstances present when they were signed and the business activity they were intended to serve, we conclude that there is more than one reasonable interpretation of the scope and conditions of the release. Although parts of the Letter Agreements use broad and sweeping language, other parts of the agreement identify the release as the result of the Bank Parties' foreclosure of the Birdsall Property in 2006. Thus, there is a question of fact as to whether the Letter Agreements express an intent to release Ortiz from all claims related to the Property and to his indebtedness, or only an intent to release him from the indebtedness remaining after the sale of the Property.

---

**5.** The Bank Parties raised the issue of ambiguity in response to the first summary-judgment motion, but not the second motion; however, the trial court stated in its order that it considered both summary-judgment motions and "all responses." The trial judge also submitted a jury question on intent. In addition, the parties before us have presented arguments about whether the Letter Agreements unambiguously expressed an intent to waive or release all of the Bank's claims, or conversely, whether there was a question of fact about the Bank's intent.

In his letter of June 23, 2006, Ortiz's attorney Michael Donovan wrote as follows:

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099–A *in connection with its foreclosure* on the above-referenced property. *As a result,* it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no *further* sums will be made or owed by Borrower, and no *further* sums will be demanded or litigated by Lender.

(emphasis added). The letter was signed and returned by an employee of HLS, together with the requested information regarding Ortiz's Form 1099–A.

We find it significant that the Form 1099–A is a part of the Letter Agreements. Under federal income-tax laws, one who, in connection with his trade or business, lends money secured by property must provide a borrower with a Form 1099–A if the lender "in full or partial satisfaction of any indebtedness, acquires an interest in any property which is security for such indebtedness...." 26 U.S.C. § 6050J(a)(1).[6] As a result of the initial foreclosure, National City acquired an interest in the Property on June 6, 2006 by purchasing it for $351,356.77; thus, it was required to provide Ortiz with a Form 1099–A. At that time, the amount of Or-tiz's indebtedness exceeded both the purchase price and the home's value; thus, there was an unanswered question as to whether National City would treat the foreclosure as full satisfaction of Ortiz's indebtedness, or only as partial satisfaction of the debt. In other words, there was an open question of whether National City would pursue a judgment against Ortiz for the deficiency, i.e., the difference between the amount of indebtedness and the value of the property. *See Kolbo v. Blair,* 379 S.W.2d 125, 130 (Tex.Civ.App.-Corpus Christi 1964, writ ref'd n.r.e.) ("Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor."). In response to the letter, HLS provided Ortiz with the information about the foreclosure to be included on the Form 1099–A, and in this material, HLS identified the "debt outstanding" as $537,207.83. In the Letter Agreement, HLS agreed that "as a result" of the foreclosure, it would not pursue "further" sums from Ortiz. Thus, drawing all inferences in favor of the summary-judgment respondents, and considering the circumstances present at the time the Letter Agreement was executed, the document reasonably can be read as expressing HLS's intent to release only the deficiency by accepting the property as full satisfaction of the debt. On the other hand, HLS stated that it would not pursue any legal proceeding "for any deficiency or *otherwise.*" This language reasonably could be read as an expression of the intent to release every claim related to the Property. Thus, the agreement is ambiguous.

---

**6.** *See also* INTERNAL REVENUE SERV., DEP'T OF THE TREASURY, 2006 INSTRUCTIONS FOR FORMS 1099–A and 1099–C, Cat. No. 27991 U, *available at* http://www.irs.gov/pub/irs–prior/i1099ac–2006.pdf ("File Form 1099–A, Acquisition or Abandonment of Secured Property ... for each borrower if you lend money in connec-tion with your trade or business and, *in full or partial satisfaction of the debt, you acquire an interest in property* that is security for the debt, or you have reason to know that the property has been abandoned.") (emphasis added).

This ambiguity was not resolved by the second Letter Agreement, which provided as follows:

> Thank you for providing a copy of the 1099–A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.[7]

> Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006 letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

This letter incorporates "all of the terms and conditions" of the earlier letter—including those that made the first letter ambiguous. Moreover, the proposed amendment is ambiguous because it reasonably can be read as an agreement merely to add another party to the original agreement, or as an agreement expanding the scope of the claims released.

A narrow interpretation is suggested by the use of the phrase, "out of an abundance of caution." When a person states that he is taking some action "out of an abundance of caution," he saying, in effect, that the action likely is unnecessary, but is employed to remove any uncertainty. He is saying, in effect, "I think that I already have taken sufficient steps to achieve the same result, but I am taking this additional step to remove any doubt." *See e.g., Fort Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 646, 110 S.Ct. 2043, 2047, 109 L.Ed.2d 659 (1990) (explaining that "technically unnecessary" provisions sometimes are "inserted out of an abundance of caution—a drafting imprecision venerable enough to have left its mark on legal Latin (*ex abundanti cautela*)."); *In re City of Georgetown*, 53 S.W.3d 328, 335–36 (Tex.2001) (orig. proceeding) (explaining that although statutory redundancies were unnecessary, the legislature "repeated itself out of an abundance of caution, for emphasis, or both"); *Wright v. Macdonell*, 88 Tex. 140, 146, 30 S.W. 907, 909 (1895) ("[I]t is not unusual for the parties to a contract, out of abundance of caution, to express that which the law would have implied . . . .").

A narrow interpretation also is implied by the use of the word, "confirm." "[T]o confirm is to establish as true that which was doubtful or uncertain." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 292 (3d ed. 1996). The use of this word suggests that the intent was to *verify* that the same terms present in the first Letter Agreement apply to National City, not to enlarge the scope of the release.

On the other hand, one reasonably could read the second paragraph of the Letter Agreement as expressing an intent to agree to two things: first, to confirm that the terms of the first letter agreement apply to National City, and second, to expand the scope of the release. This interpretation is based on the statement that National City "*also* releases and waives any and all actual and potential demands and claims" against Ortiz. Because both of these interpretations are reasonable, the second Letter Agreement is ambiguous.

---

**7.** In the first letter, Donovan incorrectly identified the "Lender" as "First Franklin Financial Corporation / National City Home Loan Services, Inc."

The ambiguity of the Letter Agreements precluded summary judgment.

The trial court took one step to partially correct this error. Despite its interlocutory rulings on the partial motions for summary judgment, the trial court recognized that the Letter Agreements were ambiguous before the case was submitted to the jury, and included in the charge a question about the meaning of the Letter Agreements. *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008) ("[B]y sending the interpretation of the [agreements] to the jury, the trial court implicitly held that the [agreements] were ambiguous."). The question was presented as follows: "With respect to the Letter Agreements, did HLS or National City validly agree that Albert Ortiz would receive ownership and possession of the Birdsall Property without obligation for further payments on the Note, and that HLS and National City would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?" The jury answered, "No."[8] In

effect, the jury found that in executing the Letter Agreements, the Bank Parties did not agree to release Ortiz from any further obligation to make payments on the Note if he received ownership and possession of the Birdsall Property. This finding was supported by the evidence in the case. At trial, HLS's representative testified that the intent of the agreements was to release the deficiency. Ortiz's lawyer testified that he wanted to ensure that Ortiz did not owe any more money to the bank. After receiving the verdict, however, the trial court reversed its implicit holding that the Letter Agreements were ambiguous, and instead reinstated its earlier erroneous rulings on the summary-judgment motions and incorporated them into the final judgment. In a ruling that appears to have been based in part on the interlocutory summary judgments, the trial court further declared in the final judgment that Ortiz had no past, present, or future obligations under the Note and the Deed of Trust, a declaration that is contrary to the jury's finding, which the trial court apparently disregarded.[9]

---

**8.** This question presents a mixed question of law and fact (i.e., the legal determination of whether the contract was valid and the factual determination of the Bank's intent). Mixed questions of law and fact are appropriate for the factfinder to decide. *See, e.g., Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex.2006); *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 441 (Tex. App.-Texarkana 2010, no pet.). If the trial court asks the jury to make a factual finding on a matter essential to a claim or defense, the jury's answer is not rendered immaterial merely because the question may have been defective. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). In such a situation, the trial court may grant a motion for a new trial, but it may not disregard the jury's finding. *Id.*

**9.** The trial court did not expressly state that it disregarded any findings, but this is apparent from other language in judgment and from

the result. In the final judgment, the trial court stated that "the motion of [Ortiz] for judgment on the verdict is GRANTED in part and that the motion of Defendants for judgment on the verdict is DENIED in part." Ortiz's motion actually was titled, "Plaintiff's Motion for Judgment on the Verdict *with Motion to Disregard Immaterial Jury Finding*," and the Bank Parties' motion was called "Defendants' Motion for Entry of Judgment *and to Disregard Certain Jury Findings*." (emphasis added). Although the trial court refers to both motions only as motions for judgment, the substance of the ruling demonstrates that the trial court granted the portion of Ortiz's motion in which he asked the trial court to disregard the jury finding interpreting the Letter Agreements, and denied the portion of the Bank Parties' motion in which they stated, "In accordance with the jury's answer to Question 6 in the negative, the court should enter a judgment allowing National City to foreclose under the Deed of Trust."

We therefore conclude that the trial court erred in granting summary judgment and in incorporating those rulings in the final judgment.

**c. The trial court's erroneous summary-judgment rulings were neither waived nor harmless.**

■ On appeal, Ortiz asserts that the Bank Parties waived any error by the trial court in considering summary-judgment grounds that were not presented in the motion but were raised orally at the summary-judgment hearing. He points out that the Bank Parties failed to object that the issue was untimely; however, no such objection was necessary. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex.1993) ("Even if the non-movant fails to except or respond, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law."). *See also Clement v. City of Plano*, 26 S.W.3d 544, 549 (Tex.App.-Dallas, no pet.) (explaining that although parties can agree to expand the issues beyond the specific grounds expressly presented in the written motion, answer, or response, the change must comply with Rule 11 of the Texas Rules of Civil Procedure), *disapproved on other grounds, Telthorster v. Tennell*, 92 S.W.3d 457, 464 (Tex.2002). Ortiz also argues that because the trial court permitted the parties to address these grounds, we should presume that the trial court gave him leave to amend his summary-judgment motion; however, he has not identified an amended summary-judgment motion in the record.

■ Ortiz further contends that even if the trial court erred in granting the summary judgments based on section 3.604, the error was harmless because the Bank Parties had an opportunity to brief the issue and the trial court fully considered the brief. But, summary-judgment grounds must be "expressly set out in the [summary-judgment] motion or in an answer or any other response." Tex.R. Civ. P. 166a(c). The Bank Parties' brief was not a "motion," and it was not an "answer or response" to a summary-judgment motion. Instead, it was a response to an oral argument, and summary judgment on a ground that is not expressly presented in the written motion, answer, or response is not properly before the trial court simply because it is addressed in a brief. *McConnell*, 858 S.W.2d at 341.

We also disagree with Ortiz's contention that the rulings, even if erroneous, were harmless. He reasons that the same result reached by the trial court was reached by the jury, because the jury found that National City breached the Deed of Trust before Ortiz did, and thus, failed to assess any monetary damages for Ortiz's breach. But the trial court not only failed to award monetary damages; it also denied the claim for judicial foreclosure, a result that is not supported by the jury's verdict. We further note that Ortiz's statutory argument was raised after the time for amending pleadings had passed, but the trial court denied the Bank Parties leave to amend their answers to plead mistake— even though this is a defense to renunciation of a debt under the statute. *See Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650, 653 (Tex.App.-Houston [14th Dist.] 1981, no writ). Finally, because the Letter Agreements are ambiguous, summary judgment based on section 3.604 was not just procedurally incorrect; it was substantively incorrect. *See Burton v. Nat'l Bank of Commerce of Dall.*, 679 S.W.2d 115, 118 (Tex.App.-Dallas 1984, no writ). In *Burton*, a bank sued a borrower for the deficiency remaining on a promissory note after the bank sold the collateral securing the loan. *Id.* at 116. Relying on the predecessor to the statute at issue here, the borrower argued that the bank waived

the right to a deficiency judgment, and the bank argued that this was not its intent. *Id.* at 118.[10] The court concluded that determining the bank's intent was a question of fact to be resolved by the jury. We reach the same result here.

As the foregoing shows, the erroneous summary-judgment rulings were one of several ways in which the trial court addressed the interpretation of the Letter Agreements. We turn now to the trial court's ruling disregarding the jury's finding on that issue.

**2. The trial court erred in disregarding the jury's finding interpreting the Letter Agreements.**

■ A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994); *Lee v. Hasson*, 286 S.W.3d 1, 17 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer*, 876 S.W.2d at 157. A jury question also can be considered immaterial when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex.1995); *Hernandez v. Atieh*, No. 14–06–00582–CV, 2008 WL 2133193, at *3 (Tex.App.-Houston [14th Dist.] May 20, 2008, no pet.) (mem. op.).

■ Here, Ortiz asserted that the trial court should disregard the jury's finding interpreting the Letter Agreements for several reasons. We conclude, however, that none of these arguments have merit.

First, Ortiz asserted that the finding would not change the effect of the verdict and that it does not concern a controlling issue. But, Ortiz's argument that the Bank Parties had released all claims for amounts due under the Note and the Deed of Trust was an affirmative defense to their claim for judicial foreclosure. In rejecting Ortiz's interpretation of the agreements, the jury rejected his affirmative defense. This finding on a controlling issue therefore made a difference in the effect of the verdict.

Ortiz also argued that the finding that the Bank Parties did not agree to forego all claims under the Deed and the Note was rendered immaterial by the jury's finding that Ortiz owes nothing under the Deed of Trust. This argument is factually incorrect; the jury did not answer the question regarding the amount due under the Deed of Trust, because the jury concluded that National City breached the Deed of Trust first and National City's damage issue was predicated on an answer that Ortiz breached first.[11] The absence of a finding is not a finding.

Finally, Ortiz asserted that "the jury took into consideration and accounted for any amounts it may have found were owed by [Ortiz] in its award of damages to [him]." We presume, however, that the jury followed the instructions in the charge. *Columbia Rio Grande Health-*

---

10. The substantive text of Texas Business and Commerce Code section 3.604 formerly appeared at section 3.605. *See* Act of May 19, 1965, 60th Leg., R.S., ch. 785, § 1, Sec. 3–605, 1965 TEX. GEN. LAWS 1, 80; Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, Sec. 3.605, 1967 TEX. GEN. LAWS 2343, 2438; Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, Sec. 3.604, 1995 TEX. GEN. LAWS 4582, 4606.

11. The parties submitted the breach question in accordance with *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004) and Texas Pattern Jury Charge 101.2, and then further conditioned damages so that jury would make a damage finding only for the party who did not breach first. Practitioners should be careful not to over-predicate, especially if one party asserts a prior material breach as a matter of law.

*care, L.P. v. Hawley,* 284 S.W.3d 851, 862 (Tex.2009). Here, each of the questions regarding Ortiz's actual damages was accompanied by the instruction, "Do not increase or reduce the amount in one answer because of your answer to any other question about damages." The single question concerning exemplary damages to be assessed against HLS was accompanied by a list of the factors to be considered, and this list did not include consideration of the amount Ortiz owed to National City under the Deed of Trust.

Because the jury's finding interpreting the agreement was material and no valid basis was asserted for disregarding it, we conclude that the trial court reversibly erred in partially granting Ortiz's post-verdict motions and denying the Bank Parties' post-verdict and post-judgment motions concerning this question. Although Ortiz used a variety of motions in asserting that the Letter Agreements prevented the Bank Parties from pursuing any claims against him, we have examined each of the challenged rulings and concluded that none are supported by the record. We therefore sustain the Bank Parties' first issue.

**3. The Note and the Deed of Trust constitute a single contract, and the claims of National City and Ortiz against one another based on this contract are not separable without unfairness to the parties.**

The Bank Parties argued that if we sustained this issue, then we should render judgment in favor of National City in the amount of $1,012,982.90, which they state is the amount of the indebtedness established by the uncontroverted evidence. Because we do not consider the record to be so clear that the amount of Ortiz's indebtedness is conclusively established, we conclude that remand is necessary to correct the error and establish the amount owed, if any.

If an error affects only part of the matter in controversy, we can limit the scope of remand to the part affected by the error if that part is separable without unfairness to the parties. TEX.R.APP. P. 44.1(b). Here, however, National City's claims against Ortiz under the Note and the Deed of Trust for breach of contract and judicial foreclosure are not separable without unfairness from Ortiz's cross-claims against National City for breach of the same contract. The trial court's rulings created an artificial distinction between the Note and the Deed of Trust; the disjunction between the two was so pronounced that there were different jury questions proposed for each, and the trial court submitted one question (predicated on a finding that a particular party breached first) and refused one of the questions (without such a predication). But, "in order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 327 (Tex. 1984) (citing *Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981)); *Nevels v. Harris,* 129 Tex. 190, 195, 102 S.W.2d 1046, 1048 (1937) (deed of trust and notes for principal and interest must be treated as one contract because the borrowers executed them at the same time and for the same purpose of obtaining a loan secured by real property). National City's claims for breach of contract and judicial foreclosure cannot be parsed fairly into claims under the Note and claims under the Deed of Trust. Because the two documents form a single contract, both the Note and the Deed of Trust must be considered on remand in relitigating these claims. On the other hand, Ortiz's claims for breach of the same contract were tried to the jury based on only half of the contract—the Deed of

Trust. We therefore conclude that it would be unfair to the parties to remand one party's claims for a new trial based on the entire contract without also remanding the opposing party's claims that were tried based on only half of the contract. Moreover, with the exception of Ortiz's limitations defense discussed below, the parties must be allowed to assert defenses to one another's claims; thus, for example, if Ortiz asserts that by executing the Letter Agreements, National City released of all of its claims without regard to whether the foreclosure was set aside, then the jury must be allowed to determine, as a question of fact, whether this was National City's intent. And, just as Ortiz may assert affirmative defenses to National City's claims, National City may assert any counter-affirmative defenses, such as mistake.

Our disposition of this issue renders moot (a) the first issue in Ortiz's cross-appeal, in which he challenges the trial court's failure to award him appellate attorney's fees; and (b) the third issue in Ortiz's cross-appeal, in which he contends that the trial court erred in applying a settlement credit to reduce National City's liability for actual damages.

## B. Is Judicial Foreclosure Time-Barred?

 In response to the Bank Parties' counterclaim to judicially foreclose on the Birdsall Property, Ortiz raised the affirmative defense that the claim was time-barred. He moved unsuccessfully for a directed verdict on this basis, and his motion to modify the judgment on the same ground was overruled by operation of law. On appeal, he contends that this defense has been conclusively established, and thus, the trial court erred in failing to grant either motion. We address this issue because it is based on the premise that a cause of action for wrongful foreclosure accrues when a misaddressed notice of intent to accelerate the debt is mailed or belatedly received. If Ortiz is correct, it could be possible to exclude National City's judicial-foreclosure claim from the scope of remand; if he is incorrect, then this defense can be excluded

In appealing the denial of a motion for directed verdict, Ortiz in effect challenges the legal sufficiency of the evidence. *See Fein v. R.P.H., Inc.,* 68 S.W.3d 260, 265 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). The test for legal sufficiency is the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review. *City of Keller,* 168 S.W.3d at 823. Where, as here, a party moves for a directed verdict on an issue on which he bore the burden of proof, he must demonstrate that he conclusively proved all facts necessary to establish his right to the requested verdict. *See Montgomery v. Byrd,* No. 14–07–01015–CV, 2009 WL 2589431, at *3 (Tex.App.-Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.).

Ortiz points out that on December 21, 2005, the Bank Parties sent Ortiz a notice that the debt had been accelerated, but the letter was mailed to the wrong address. The Bank Parties faxed the same letter to Ortiz's attorney on January 13, 2006. Ortiz contends that the cause of action for judicial foreclosure accrued on one of these dates. Because National City did not file its judicial-foreclosure claim until February 3, 2010, which is more than four years after each of these dates, Ortiz contends that the claim is time-barred. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.035(a) (West 2002) ("A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.").

 Where, as here, a deed of trust contains an optional debt-acceleration clause, a cause of action for judicial fore-

closure accrues when the note holder actually exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001); *CA Partners v. Spears,* 274 S.W.3d 51, 65 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross,* 44 S.W.3d at 566. "Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure." *Ogden v. Gibraltar Sav. Ass'n,* 640 S.W.2d 232, 234 (Tex.1982). A notice that the debt actually has been accelerated is ineffective if it was not preceded by proper notice of intent to accelerate the debt. *Jasper Fed. Sav. & Loan Ass'n v. Reddell,* 730 S.W.2d 672, 674 (Tex.1987). In addition, both the Note and the Deed of Trust in this case provided that a notice of acceleration "shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 [of the Deed of Trust] within which Borrower must pay all sums secured by [the Deed of Trust]." Under the terms of Section 15 of the Deed of Trust, all notices were to be mailed or otherwise delivered to "Borrower's notice address," which was defined to be "the Property Address unless Borrower has designated a substitute notice address by notice to Lender."

Ortiz has not conclusively established that before accelerating the debt the Bank Parties provided proper notice to him of their intent to accelerate. According to the undisputed testimony presented at trial, Ortiz properly notified the Bank Parties that all required notices to him were to be sent to his business address. The Bank Parties failed to send the required notice of intent to accelerate and notice of acceleration to the specified address, and instead mailed the notices to the address of the Birdsall Property. On January 13, 2006, the attorney for the Bank Parties faxed to Ortiz's attorney copies of the following documents: (1) a default letter dated November 1, 2005 stating that the debt would be accelerated if it was not brought current by December 1, 2005; (2) a notice of acceleration, dated December 21, 2005; (3) a file-stamped notice of the foreclosure sale scheduled to take place on February 7, 2006, i.e., twenty-five days from the date of the fax; and (4) a "payoff quote good through February 6, 2006," in which the total amount due from Ortiz was said to be $490,882.19. All of this material was sent to Ortiz's attorney at the same time, after the debt had been accelerated and less than 30 days before a scheduled foreclosure sale. Thus, Ortiz failed to conclusively establish that the cause of action for judicial foreclosure accrued on December 21, 2005 or on January 13, 2006 as he contends, because he did not prove that there was an *effective* notice of acceleration at either of these times.[12]

Because Ortiz failed to establish conclusively that the judicial-foreclosure cause of action accrued more than four years before the claim was filed, the trial court did not err in denying Ortiz's motion for directed verdict. For the same reason, the trial court did not abuse its discretion in failing to modify the judgment to specify that the judicial-foreclosure claim is time-barred. We accordingly overrule Ortiz's fourth issue. In light of our disposition of this issue and of National City's first issue, we conclude that National City is not barred

---

**12.** Indeed, in a motion for summary judgment, Ortiz stated,

> Ortiz never received ... a notice of intent to accelerate the Note before learning that the Note had been actually accelerated and

was being posted for sale. Thus, Ortiz never received the opportunity to avoid acceleration, as required by law and ... the Deed of Trust.

from retrying its claim for judicial foreclosure on remand. Because Ortiz's limitations defense was based on a mistaken legal premise—i.e., that a cause of action for wrongful foreclosure accrues when a notice of intent to accelerate the debt is mailed to the wrong address or belatedly received—this defense is excluded from the scope of remand.

## C. Did the Trial Court Abuse its Discretion by Failing to Expunge a Post–Trial Notice of Lis Pendens?

In Ortiz's petition for a writ of mandamus, he argued that the trial court clearly abused its discretion by denying his motion to expunge the post-trial notice of lis pendens. By statute, "[a] party to an action in connection with which a notice of lis pendens has been filed may ... apply to the court to expunge the notice...." Tex. Prop.Code Ann. § 12.0071(a)(1) (West Supp.2012). "The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows." *Id.* § 12.0071(e). "The court shall order the notice of lis pendens expunged if the court determines that ... the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim...." *Id.* § 12.0071(c)(2).

In light of our determination of the issues presented in the Bank Parties' appeal and "the probable validity of the real property claim," we cannot conclude that the trial court abused its discretion in denying Ortiz's motion to expunge the notice of lis pendens. We accordingly deny Ortiz's petition for writ of mandamus. *See* Tex. R.App. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the

court of appeals concludes that the error complained of ... probably caused the rendition of an improper judgment....").

## IV. Claims Against HLS

In the remaining issue asserted in Ortiz's cross-appeal, he points out that he presented three different theories of liability entitling him to damages from HLS for the loss of his personal property, and the jury answered a damage question associated with each theory. He argues that the trial court erred in awarding him the largest amount of damages assessed by the jury for this injury, rather than awarding him the sum of all three damage calculations for this loss.[13] Ortiz similarly asserts that he is entitled to recover damages from HLS for the loss of use of the real property, even though the trial court granted judgment against National City for that injury.

▮▮▮ Absent an election, the trial court is required to render judgment "so framed as to give the party all the relief to which he may be entitled either in law or in equity." Tex.R. Civ. P. 301. But, under the one-satisfaction rule, a claimant is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex.1991)). The rule applies when different parties commit the same act or when different acts cause the same injury. *Id.* When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the prevailing party has a right to a judgment on the theory that affords him the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex.1988).

---

13. HLS has not appealed the portion of the judgment in which the trial court held it to be liable to Ortiz for $100 in exemplary damages and $10,000 in actual damages, which represents the maximum amount found by the jury to be the fair market value of his personal property.

Ortiz contends that he is entitled to recover the sum of all of the damages found by the jury for each injury under the various theories of liability submitted because the Bank Parties (1) did not plead the one-satisfaction rule as an affirmative defense, (2) did not object to the submission of more than one acceptable measure of his damages, and (3) did not request a limiting instruction to prevent the possibility of a double recovery. No such actions were required. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998) (per curiam); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex.2006) ("'There can be but one recovery for one injury, and the fact that ... there may be more than one theory of liability[ ] does not modify this rule.'" (alterations in original) (quoting *Stewart Title Guar. Co.*, 822 S.W.2d at 8)).

Here, the jury found that Ortiz suffered two injuries: the loss of personal property, measured by the property's fair market value, and the loss of the use of the real property, measured as lost rental value. As a result of our disposition of National City's first issue, the one-satisfaction rule currently does not apply to one of these injuries. We therefore discuss them separately.

### A. Damages for Lost Personal Property

■■■ Ortiz asserted three different theories of liability for this injury, and the jury made favorable findings for each of

them. Under a negligence theory of liability, the jury found that the fair market value of Ortiz's lost personal property was $10,000. Under theories of conversion and trespass to personalty, the jury found that the fair market value of the lost personal property was $1,500. The trial court rendered judgment against HLS for $10,000 in actual damages, which is the largest amount of damages assessed by the jury for this injury. Because an additional award for the same injury would be an impermissible double recovery, we overrule Ortiz's second cross-issue as it pertains to his damages for lost personal property.

### B. Loss of the Use of Real Property

In the trial court, Ortiz alleged that National City's breach of contract and HLS's trespass to real property caused him to lose the use of the Birdsall Property. The jury agreed, and for each of these claims, the jury was asked to measure the damage by the Property's lost rental value. Under the breach-of-contract theory, the jury found that the Property's lost rental value was $100,000; under the trespass theory, the jury found that the lost rental value was $77,000. Because the jury assessed the larger amount of damages for this injury against National City, the trial court included those damages in the judgment rendered against that defendant. After applying a $12,500 settlement credit from a defendant who settled before trial, the trial court rendered judgment against National City for $87,500.[14] The trial

14. On appeal, Ortiz argued that the settlement credit should not have been applied as an offset to any recovery for his breach-of-contract claim against National City. In response, the Bank Parties correctly pointed out that Ortiz sued National City, HLS and Keystone, the settling party, for trespass to real property. Moreover, Ortiz alleged that the Bank Parties were liable with Keystone because its acts or omissions were committed as

the Bank Parties' agent, and because the Bank Parties ratified, adopted, and accepted the benefits of Keystone's actions. Ortiz does not contend that the settlement credit does not apply to the real-property damages assessed against HLS for its trespass, and he points out that a non-settling defendant can claim a settlement credit for damages for which all joint tortfeasors are jointly liable.

court did not render judgment against HLS for the damages for the same injury because this would have constituted a double recovery.

On appeal, Ortiz argues that he is entitled to recover the damages assessed by the jury against HLS for loss of the use of real property because the one-satisfaction rule does not apply. The Bank Parties respond that Ortiz is not entitled to recover from HLS for this damage because damages for the same injury were awarded against National City, and thus, an additional award against HLS for loss of use of the real property would constitute a double recovery. Because we have reversed the judgment as it pertains to Ortiz's breach-of-contract claim against National City and National City's claims against Ortiz for breach of contract and judicial foreclosure, it currently is not possible to determine whether, on retrial of these issues, the one-satisfaction rule will continue to apply to reduce HLS's liability for actual damages.

To the extent that Ortiz complains that the trial court erred in awarding him the greatest fair market value found by the jury for his lost personal property rather than awarding him an amount equal to the sum of the jury's three personal-property fair market-value findings, we overrule this issue. Because the total amount of HLS's liability to Ortiz for actual damages cannot be determined until the breach-of-contract claims of Ortiz and National City against one another are retried, we reverse the portion of the judgment specifying this amount.

In effect, our resolution of this case results in a bifurcated trial. HLS will continue to be liable to Ortiz for at least $10,000 in actual damages, which is the maximum amount that he is entitled to recover for his loss of personal property, together with $100 in exemplary damages; however, the total amount of HLS's liability for actual damages will have to be determined after the claims to be retried are resolved. Until then, it cannot be determined if the one-satisfaction rule will continue to bar Ortiz's recovery of damages from HLS for loss of the use of real property.

## V. CONCLUSION

We conclude that the Letter Agreements signed by National City's representative are ambiguous; thus, Ortiz did not establish as a matter of law that National City is barred from recovering amounts owed under the Note and the Deed of Trust or from judicially foreclosing on the Property. Instead, there is a question of fact regarding the parties' intentions. Ortiz also did not establish that National City's claims for judicial foreclosure are time-barred. Although the trial court's rulings erroneously divided the parties' breach-of-contract claims into claims under the Note and claims under the Deed of Trust, the two documents must be construed as a single contract. Because these parties' various breach-of-contract claims against one another are not separable without unfairness to the parties, both of their contract claims must be retried on remand, together with National City's claim for judicial foreclosure. In light of the need to retry the judicial foreclosure claim and the probable validity of that claim, we deny Ortiz's petition for a writ of mandamus.

As for Ortiz's claims against HLS, we hold that the trial court did not err in limiting Ortiz to one recovery for the loss of his personal property. Because the breach-of-contract claims of National City and Ortiz against one another must be retried, it cannot yet be determined whether National City will be found to be liable to Ortiz for loss of the use of real property, or if so, whether the damages found for

that injury will be greater or lesser than the amount assessed against HLS for the same injury. As a result, the total amount of HLS's liability to Ortiz for actual damages will have to be determined after those breach-of-contract claims are retried.

For these reasons, we deny Ortiz's petition for a writ of mandamus, and we

A. reverse the portions of the judgment

1. holding National City liable to Ortiz for actual damages, interest, and attorneys' fees;

2. providing that National City takes nothing by its claims;

3. denying National City's request for judicial foreclosure;

4. declaring that the "Note and the Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust";

5. providing that "all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment"; and

6. specifying the amount of the actual damages awarded against HLS;

B. affirm the portions of the judgment that were neither challenged on appeal nor affected by our disposition of the issues as set forth in this opinion, that is, Ortiz's claims for fraud, common-law unreasonable debt-collection, statutory debt-collection violations, statutory deceptive trade-practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se; and

C. remand the case with instructions to the trial court to

(1) retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense discussed herein, permitting the parties to assert defenses to these claims;

(2) after applying the one-satisfaction rule and any settlement credits, determine the total amount of HLS's liability to Ortiz for actual damages and the amounts, if any, that are owed by National City to Ortiz or by Ortiz to National City; and

(3) render a final judgment that is consistent with this opinion.

FROST, J., dissenting.

## DISSENTING OPINION ON REHEARING[1]

KEM THOMPSON FROST, Justice.

I respectfully dissent.

### Appeal

The main issue in this case is whether there is more than one reasonable interpretation of two letters signed on behalf of National City Bank of Indiana (the "Bank") by National City Home Loan Services, Inc. (the "Servicer"), at the request of one of the Bank's borrowers, Albert Ortiz. There is only one, and it is this: without receiving any consideration, the Bank expressly waived all of its rights against Ortiz under the promissory note dated March 15, 2004 ("Note"). Because of this unambiguous waiver, the Bank is

---

1. The dissenting opinion of November 20, 2012, is withdrawn, and this dissenting opinion on rehearing is issued in its place.

not entitled to recover under the Note. For this reason, this court should affirm the trial court's partial take-nothing summary judgment in favor of Ortiz on claims arising from the Note.

The majority errs by concluding that the letters are ambiguous. As explained below, there is nothing unclear or uncertain about the waiver language or its effect. Under a straightforward application of Texas law, the letters mean precisely what they say. Though the Bank and the Servicer (collectively, the "Bank Parties") assert that they did not intend to waive all the claims under the Note, the words they used could hardly be clearer. The Bank may have acted imprudently in renouncing its rights under the Note without obtaining its own release or waiver from Ortiz but imprudent acts have consequences under the law. The Bank stated that it "releases and *waives* ... *all* ... *claims* regarding *any obligations or liabilities* of [Ortiz] in connection with the above-referenced property, *including the note* and deed of trust associated with such property." [2] The legal consequence of this act is a renunciation of the Bank's claims under the Note. This is the only reasonable interpretation of the language. Instead of holding the Bank to its unambiguous words, the majority finds an ambiguity where none exists and remands this case for a new trial.

Today's decision is bad for borrowers and bad for lenders. By stretching and straining to find that the unambiguous waiver language is ambiguous, the majority not only contravenes the directives of the Supreme Court of Texas but also creates bad precedent from this court that will make it more difficult for courts in this jurisdiction to find any waiver language unambiguous.

*Unwelcome Consequences of Today's Decision*

Parties count on waivers and releases to bring an immediate and final end to claims and disputes. An unambiguous waiver or release of claims serves a crucial purpose in our economy. By giving and receiving waivers or releases, parties can avoid the time, expense, and distraction of protracted litigation *if* the waiver or release is unambiguous.

The ambiguous/unambiguous distinction is significant. Unambiguous provisions can be enforced by summary judgment; ambiguous ones usually cannot. Often, parties will not settle disputes if there is no reasonable expectation that courts will enforce a waiver of rights without putting them to the inconvenience, expense, and uncertainty of a full-blown trial. Because the waiver language at issue in today's case is commonly used to settle claims, today's holding that this language is ambiguous jeopardizes summary judgment as a viable option in future cases. Quite simply, by refusing to hold the Bank to its unambiguous waiver, the majority reaches the wrong result in this case and devalues all unambiguous waiver language. This time it is the Bank trying to avoid its unambiguous waiver of claims against the borrower; next time, it may be a borrower who seeks to avoid the unambiguous waiver of lender-liability claims against a bank.

Simple issues previously resolved at the summary-judgment stage may have to be determined through trials to fix the meaning of documents that should be declared clear and unambiguous as a matter of law. Borrowers who have been released from debt obligations face uncertainty because what they reasonably believed was an unambiguous renunciation of debt claims now holds only the hope of enforcement at the

**2.** (emphasis added).

end of protracted and costly litigation. Likewise, lenders and other parties holding releases from borrowers may end up paying twice for the same waiver or release just to avoid the time, expense, and uncertainty of full-scale trials they already bargained to escape.

Unambiguous waivers and releases are valued precisely because of the expectation that courts will enforce them as written in response to a properly filed and presented summary-judgment motion. When courts fail to do so, parties' legitimate expectations are frustrated, and the law becomes uncertain and unpredictable. Predictability is especially important in this area of the law because it enables parties to evaluate the strength of a proposed written waiver or release and the likely outcome should its enforceability become an issue in court. Knowing how a court interprets standard waiver and release language is critical to the settlement decision. When parties can trust courts to enforce unambiguous waivers and releases, they will engage in settlement transactions. Without that assurance, more often they will not. The citizens of this state are best served by a jurisprudence that will foster predictability by holding parties to their written word. Today's decision undermines this objective.

### Disposition Under a Plain-Meaning Analysis

Application of longstanding Texas law demonstrates that the waiver language at issue in today's case is susceptible to only one reasonable interpretation. For this reason, the Bank's claims under the Note fail as a matter of law.

3. Unless otherwise stated, all statutory citations in this opinion are to the Texas Business and Commerce Code.

4. Tex. Bus. & Comm.Code Ann. § 3.604(a) (West 2013).

**The trial court granted summary judgment as to the Bank Parties' claims under the Note, concluding that these claims were waived or released under section 3.604 of the Texas Business and Commerce Code.**

The trial court granted partial summary judgment in Ortiz's favor, ordering that the Bank Parties take nothing on any claim arising from the Note. The trial court based this summary-judgment ruling upon its conclusion that the claims under the Note were waived or released under section 3.604 of the Texas Business and Commerce Code.[3] This statute, entitled "Discharge by Cancellation or Renunciation," provides in pertinent part:

(a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:

(1) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge; or

(2) by agreeing not to sue or otherwise renouncing rights against the party by a signed record.[4]

Discharge by written renunciation, the type of waiver addressed in section 3.604(a)(2), has a long pedigree stretching back many years.[5] It was imported into the law merchant from French law, and then the British Parliament adopted it into English law from the law merchant in the Bills of Exchange Act of 1882.[6] Though

5. See Hall v. Wichita State Bank & Trust Co., 254 S.W. 1036, 1037–39 (Tex.Civ.App.-Amarillo 1923, writ refused); Bagley v. Kerr, 166 Or. 368, 112 P.2d 459, 464–66 (1941).

6. See Hall, 254 S.W. at 1038.

discharge by written renunciation was generally not adopted into American common law, the drafters of the American Uniform Negotiable Instruments Act incorporated it from English law into section 122 of that act, which was eventually enacted in all American states. *See Hall,* 254 S.W. at 1038–39; *Bagley,* 112 P.2d at 465–66. This provision was the basis for the part of the Uniform Commercial Code currently found in section 3.604(a). Despite this core principle having been the law of all American states for many years, there are not many cases addressing discharge by written renunciation.[7] The parties have not cited and research has not revealed any case in which a court has construed section 3.604(a)(2). But, there is ample Texas jurisprudence on the law of waiver; renunciation is a species of waiver.

This court reviews the trial court's interpretation of applicable statutes de novo.[8] In interpreting a statute, this court's objective is to determine and give effect to the Legislature's intent.[9] If possible, this court must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state.[10] If the meaning of the statutory language is unambiguous, the court is to adopt the interpretation supported by the plain meaning of the provision's words.[11] This court must yield to the plain sense of the words the Legislature chose.[12]

Section 3.604(a)(2) is unambiguous. In this section the Legislature provides that a person (which includes a bank) entitled to enforce a negotiable instrument may unilaterally and without consideration discharge the obligation of a party to pay the instrument by agreeing in writing not to sue the party or by expressly renouncing or waiving the person's rights against the party in a writing signed by the person.[13] That is precisely what we have in this case.

**The Bank unambiguously waived its rights under the Note by written renunciation, and the majority errs in concluding that the Letters are ambiguous.**

An employee of the Servicer signed one letter on June 27, 2006 ("First Letter"), and a second letter on July 6, 2006 ("Second Letter"). The summary-judgment evidence contains the First Letter and the Second Letter (collectively, the "Letters"), both of which are signed writings. The First Letter states, in pertinent part:

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099–A in connection with its foreclosure on the above-referenced property. As a result, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that

---

7. *See Hall,* 254 S.W. at 1037–39; *Shaffer v. Akron Products Co.,* 91 Ohio App. 535, 109 N.E.2d 24, 26 (1952); *Bagley,* 112 P.2d at 464–66.

8. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989).

9. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000).

10. *Id.*

11. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997).

12. *See id.*

13. *See* Tex. Bus. & Comm.Code Ann. § 3.604(a). *See also Hall,* 254 S.W. at 1039 (stating that " 'a written renunciation or discharge of a bill or note or of the liability of any party thereon is now good without consideration' ") (quoting Williston on Contracts); *Shaffer,* 109 N.E.2d at 26 (stating that "[b]y 'renunciation' is meant the gratuitous abandonment or giving up of a right; and express waiver without consideration").

Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender. Under this unambiguous language, the agent who signed the First Letter did not sign it on behalf of the Bank. Nonetheless, as discussed below, under the unambiguous language of the Second Letter, the agent who signed that writing signed it on behalf of the Bank and, in the Second Letter, the Bank agreed to all of the terms of the First Letter. The majority concedes that, at a minimum, the Second Letter makes all the terms of the First Letter applicable to the Bank.

In the text of the First Letter, the Bank[14] stated that, as a result of its foreclosure on the real property that was the subject of the deed of trust (the "Property"), the Bank did not intend to and would not "file or pursue any lawsuit or other legal proceeding against [Ortiz] for any deficiency *or otherwise.*"[15] (emphasis added). The majority concludes that it is reasonable to construe this text as waiving only the Bank's claim against Ortiz for the deficiency remaining after the foreclosure

sale.[16] But the words that follow "deficiency" cannot be treated as though they are invisible; the Bank stated that it would not file or pursue any lawsuit or legal proceeding against Ortiz "for any deficiency or otherwise." This language is plainly cast in the disjunctive and "or otherwise" plainly entails more than "any deficiency."

To give effect to the "or otherwise" language, one must interpret the Bank's waiver to include its deficiency claim as well as all other claims against Ortiz regarding the Note and the Property. The majority asserts that it is reasonable to construe this language as waiving only the Bank's deficiency claim. But such a construction renders the words "or otherwise" meaningless; therefore, this construction is unreasonable.[17] A faithful interpretation under Texas law cannot render part of the document meaningless.

Because the "as a result" phrase refers to the foreclosure sale, the majority concludes that it is reasonable to construe this sentence as waiving only the Bank's claim against Ortiz for the deficiency remaining after the foreclosure sale.[18] The majority finds ambiguity because of a perceived conflict between "broad and sweeping" language in the First Letter and other language in the letter referring to the foreclo-

---

**14.** For ease of reference, in discussing the First Letter, the "Lender" is referred to as the Bank, even though the Bank did not become bound by the terms of the First Letter until an agent of the Bank signed the Second Letter.

**15.** According to the majority, in the First Letter the Bank "agreed that 'as a result' of the foreclosure, it would not pursue 'further' sums from Ortiz." *Ante* at p. 879. This statement is not accurate.

**16.** *See ante* at pp. 879–80.

**17.** *See Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 133 (Tex.2010) (concluding contract interpretation was not reasonable because it would render part of the contract meaningless); *Am.*

*Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 160 (Tex.2003) (rejecting a contract construction as unreasonable because it was inconsistent with language in the contract that was clearly disjunctive); *Virginia Power Energy Marketing, Inc. v. Apache Corp.,* 297 S.W.3d 397, 403 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (rejecting contract interpretation that would render part of the contract meaningless); *Coastal Terminal Operators v. Essex Crane Rental Corp.,* No. 14–02–00627–CV, 2004 WL 1795355, at *6 (Tex. App.-Houston [14th Dist.] Aug. 12, 2004, pet. denied) (concluding contract interpretation was not reasonable because it would render part of the contract meaningless) (mem. op.).

**18.** *See ante* at pp. 879–80.

sure sale.[19] But the specific reference to the foreclosure sale does not make it reasonable to construe "for any deficiency or otherwise" to mean "for any deficiency."[20] The additional words the majority ignores add meaning. They are an integral part of the operative language. It is not reasonable or proper to disregard these words in construing the First Letter.

In the next sentence of the First Letter, the Bank waives "any and all demands and claims" regarding "any and all obligations and liability that [Ortiz] may have *or may have had* to [the Bank]."[21] Again, the majority concludes it is reasonable to construe the text of the First Letter as waiving only Ortiz's obligations and liability under the then-existing deficiency claim. This construction makes the words "or may have had" meaningless; therefore, this construction is unreasonable.[22] The words "or may have had" add meaning, and it is not reasonable or proper to ignore these words in construing the text of the First Letter.

The majority relies upon the word "further" in the following sentence in the First Letter: "It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender." This language follows a sentence in which the Bank waives any and all claims regarding Ortiz's past or present obligations and liabilities. In this context, the First Letter describes the Bank's waiver as applying to all claims regarding all of Ortiz's past or present obligations and liability, and then the letter states that no further obligations will accrue or be pursued by the Bank. Even presuming that this sentence is limited to claims regarding further obligations and liability, it is not reasonable to construe this sentence as limiting the waiver in the entire letter to such obligations and liability.

In determining whether the First Letter is ambiguous, the majority relies upon the summary-judgment standard of review, drawing all inferences in favor of the Bank Parties because they were non-movants.[23] But, whether the First Letter is ambiguous is a question of law that this court is supposed to determine de novo.[24] Therefore, the majority does not apply the correct standard of review in reaching its answer.[25] An analysis under the proper standard yields the opposite result.

The majority attaches significance to the fact that the First Letter contains a reference to the IRS Form 1099–A that the

**19.** *See id.*

**20.** *See Memorial Medical Center of East Texas v. Keszler,* 943 S.W.2d 433, 434–35 (Tex.1997) (interpreting two documents that constituted a single agreement and concluding that, even though the release given by releasor in one part of the agreement was clearly narrower than the release given by releaser in another part of the agreement, the court would still give effect as a matter of law to the unambiguous, broader language); *Sterling Equities, Inc. v. Chubb Custom Ins. Co.,* 806 F.Supp.2d 1004, 1007–1010 (S.D.Tex.2011) (applying Texas law and holding that broad language of release unambiguously covered one of the insured's properties, even though that property was not specifically mentioned at all in the release and even though three other properties were specifically mentioned as being the subject of the release).

**21.** (emphasis added).

**22.** *See Gilbert Texas Construction, L.P.,* 327 S.W.3d at 133; *Virginia Power Energy Marketing, Inc.,* 297 S.W.3d at 403; *Coastal Terminal Operators,* 2004 WL 1795355, at *6.

**23.** *See ante* at pp. 879–80.

**24.** *See Bowden v. Phillips Petroleum Co.,* 247 S.W.3d 690, 705 (Tex.2008); *Avenell v. Chrisman Properties, L.L.C.,* No. 14–08–01180–CV, 2010 WL 1379972, at *2 (Tex.App.-Houston [14th Dist.] Apr. 8, 2010, no pet.) (mem. op.).

**25.** *See Bowden,* 247 S.W.3d at 705; *Avenell,* 2010 WL 1379972, at *2.

Bank planned to file regarding the June 6, 2006 foreclosure sale. The First Letter contains a confirmation that the Bank has completed and will file this form. But the filing of this form does not speak to whether the Bank waives any or all of its rights against Ortiz under the Note.

Under the unambiguous language of the First Letter, the Bank waived any and all claims it had against Ortiz regarding any obligations or liabilities under the Note and renounced in a signed writing the Bank's rights against Ortiz under the Note.[26] As a matter of law, under the plain language of the First Letter, the Bank waived and renounced all claims and demands against Ortiz based upon the Note. Hence, the summary-judgment evidence proved as a matter of law the Bank's waiver of its rights under the Note based upon the First Letter.

In pertinent part, the Second Letter contains the following language:

Thank you for providing a copy of the 1099–A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.[[27]]

Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006, letter agreement also apply to [the Bank], as the Lender, and that [the Bank] also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

Under this unambiguous text, the Bank confirmed that all of the terms and conditions of the First Letter applied to the Bank. As discussed above, under these terms and conditions, the Bank unambiguously waived any and all claims it had against Ortiz regarding any obligations or liabilities arising from the Note. Under the unambiguous conjunctive language of the Second Letter, the Bank also confirmed that it released and waived any and all demands and claims regarding any obligations or liabilities of Ortiz, in connection with the Property, including the Note and the deed of trust securing payment of the Note (the "Deed of Trust"). The majority

---

**26.** *See* Tex. Bus. & Comm.Code Ann. § 3.604(a); *Thompson v. Kerr*, No. 14–08–00978–CV, 2010 WL 2361636, at *4 (Tex. App.-Houston [14th Dist.] June 15, 2010, no pet.) (holding trial court properly granted summary judgment because, in a settlement agreement, plaintiffs unambiguously manifested an intent to waive their rights against the defendant) (mem. op.); *Tran v. Compass Bank*, No. 02–11–00189–CV, 2012 WL 117859, at *1–2 (Tex.App.-Fort Worth Jan. 12, 2012, no pet.) (holding that, under broad and unambiguous provision of guaranty agreement, guarantor waived as a matter of law statutory right to offset against a deficiency owed following foreclosure on deed-of-trust lien) (mem. op.); *ASI Technologies, Inc. v. Johnson Equipment Co.*, 75 S.W.3d 545, 547–49 (Tex.App.-San Antonio 2002, pet. denied) (holding that, under unambiguous language of settlement agreement, party waived its statutory indemnity rights as a matter of law); *Shaffer*, 109 N.E.2d at 26 (stating that "all of the authorities agree that, where there is an express renunciation in writing of a claim evidenced by a note by the holder thereof, such instrument is discharged" and holding that writing signed by holder of note discharged the note by written renunciation); *Bagley*, 112 P.2d at 466 (holding that signed writing by holder of promissory note discharged the note by written renunciation).

**27.** In the first letter, the "Lender" was incorrectly identified as "First Franklin Financial Corporation/National City Home Loan Services, Inc."

concludes that it is reasonable to construe the text of the Second Letter as only confirming that the Bank is bound by the First Letter.[28] But this construction renders the word "and" meaningless; so, this construction is unreasonable.[29]

Under the only reasonable construction of the Second Letter, the Bank confirmed two things: "that all of the terms and conditions of the [First Letter] also apply to [the Bank], as the Lender, *and* that [the Bank] also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of [Ortiz], in connection with the [Property], including the [Note] and [Deed of Trust]." [30] By each of these confirmations, the Bank unambiguously agreed not to sue Ortiz regarding any obligations or liabilities under the Note and renounced in a signed writing all of the Bank's rights against Ortiz under the Note.[31] The majority's interpretation is not reasonable under Texas law.[32]

In support of its conclusion that it is reasonable to construe the Second Letter as only confirming that the Bank is bound by the First Letter, the majority relies upon the words "out of an abundance of caution" and "confirm." But these words do not make it reasonable to interpret the Second Letter as confirming one matter as opposed to two matters. Ortiz's lawyer identified an issue at the beginning of the Second Letter—the Servicer had signed the First Letter on behalf of the wrong lender. Though addressing this mistake in the First Letter was clearly a purpose of the Second Letter, the existence of this purpose does not mean that the Bank cannot confirm two matters under the unambiguous language of the Second Letter.[33] As a matter of law, under the plain language of the Second Letter, the Bank waived and renounced all claims and demands against Ortiz based upon the Note.[34] Therefore, the summary-judgment evidence proved as a matter of law the

---

**28.** *See ante* at p. 880.

**29.** *See Gilbert Texas Construction, L.P.,* 327 S.W.3d at 133; *Am. Mfrs. Mut. Ins. Co.,* 124 S.W.3d at 160; *Virginia Power Energy Marketing, Inc.,* 297 S.W.3d at 403; *Coastal Terminal Operators,* 2004 WL 1795355, at *6.

**30.** (emphasis added).

**31.** *See* Tex. Bus. & Comm.Code Ann. § 3.604(a); *Thompson,* 2010 WL 2361636, at *4; *Tran,* 2012 WL 117859, at *1–2; *ASI Technologies, Inc.,* 75 S.W.3d at 547–49; *Shaffer,* 109 N.E.2d at 26; *Bagley,* 112 P.2d at 466.

**32.** Even presuming for the sake of argument that the First Letter is ambiguous as to whether the Bank waived all of its rights against Ortiz under the Note, this second confirmation still would constitute an unambiguous renunciation and waiver by the Bank in a signed writing of the Bank's rights against Ortiz under the Note.

**33.** *See Memorial Medical Center of East Texas,* 943 S.W.2d at 434–35 (construing two docu-

ments that constituted a single agreement and concluding that, even though the release given by releasor in one part of the agreement was clearly narrower than the release given by releaser in another part of the agreement, the court would still give effect as a matter of law to the unambiguous, broader language); *Sterling Equities, Inc.,* 806 F.Supp.2d at 1007–1010 (applying Texas law and holding that broad language of release unambiguously covered one of the insured's properties, even though that property was not specifically mentioned at all in the release and even though three other properties were specifically mentioned as being the subject of the release).

**34.** The Bank Parties also argue that intent is a fact issue for the jury and not a proper subject of a summary judgment. But, this court has held that a court should find waiver when, as in this case, a party unequivocally manifests an intent to no longer assert its rights and that a trial court may grant summary judgment if such a waiver is proved by the language of an unambiguous writing. *See Thompson,* 2010 WL 2361636, at *4.

Bank's waiver of its rights under the Note based upon the Second Letter.[35]

The trial court did not err in concluding that, under section 3.604(a), in the Letters, the Bank unambiguously waived its rights against Ortiz under the Note, without any consideration.[36] Because the Bank expressly waived its rights against Ortiz under the Note in both the First Letter and the Second Letter, the Bank Parties were not entitled to recover on the Note.[37] And, because there is only one reasonable interpretation of the Letters, this court should enforce these documents as written.[38]

This court should not disregard key words in the Letters or question the wisdom of the Bank's execution of them, nor should this court rewrite the provisions of the Letters under the guise of interpretation.[39] Sometimes parties—even sophisticated ones like banks—sign unambiguous documents that they later regret having signed. When that happens, the answer is not to make clear things cloudy or to strain to find fact issues that will spoil a summary judgment and thereby give the hope of a different outcome in a jury trial. It is this court's duty to enforce clear waiver language as written. Doing so not only honors the parties' intentions as expressed in unambiguous writings but, even more importantly, it strengthens crucial rule-of-law values that are so vital to the health of our system of justice.

The Bank unequivocally waived its claims under the Note and it should be held to its waiver. This court should affirm the trial court's June 2010 partial summary judgment that the Bank Parties take nothing on any claim arising from the Note (the "Partial Summary Judgment"). **The trial court did not err in impliedly granting the borrower's motion to disregard the jury's finding in response to Question 6.**

The Bank Parties also argue that the trial court erred by impliedly granting Ortiz's motion to disregard the jury's finding in response to Question 6. In this finding the jury answered "no" to the following question, which was submitted without any accompanying instructions:

> With respect to the Letter Agreements, did [the Servicer] or [the Bank] validly agree that Albert Ortiz would receive ownership and possession of the [Property] without obligation for further payments on the Note, and that [the Servicer] and [the Bank] would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?

A trial court may disregard a jury finding if it is unsupported by evidence or if the question is immaterial.[40] A question is immaterial when it should not have been submitted, when it calls for a finding beyond the province of the jury, such as a

---

**35.** The Bank Parties cite three cases that they assert support their position; but these cases are not on point because they all involve the alleged discharge of a negotiable instrument based upon conduct described in section 3.604(a)(1) rather than under section 3.604(a)(2).

**36.** *See* Tex. Bus. & Comm.Code Ann. § 3.604(a); *Thompson*, 2010 WL 2361636, at *4; *Tran*, 2012 WL 117859, at *1–2; *ASI Technologies, Inc.*, 75 S.W.3d at 547–49; *Shaffer*, 109 N.E.2d at 26; *Bagley*, 112 P.2d at 466.

**37.** The majority relies upon *Burton v. National Bank of Commerce of Dallas*, 679 S.W.2d

115 (Tex.App.-Dallas 1984, no writ). *See ante* at p. 883. In *Burton*, the waiver was based upon oral statements, not upon any writing, as in the case under review. *See Burton*, 679 S.W.2d at 116–18. The *Burton* case is not on point.

**38.** *See Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 646 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

**39.** *See id.*

**40.** *See Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex.1994).

question of law, or when it was properly submitted but has been rendered immaterial by other findings.[41]

The trial court submitted Question 6 over Ortiz's objection that this question does not track the wording of the Letters. Ortiz's counsel pointed out that the Letters were signed after the foreclosure sale and before the trial court set it aside. Ortiz objected to the language about Ortiz receiving ownership and possession of the Property because the Letters contain no such language. Ortiz's objections were valid. The Letters were signed within one month of the foreclosure sale and more than two years before the trial court granted summary judgment on Ortiz's wrongful-foreclosure claim, set aside the trustee's deed, and restored title in the Property to Ortiz. Significantly, when the Letters were signed, the Bank held title to the Property, and the Letters do not mention any agreement that Ortiz would receive ownership and possession of the Property. The Letters address an express waiver of the Bank's rights under the Note and Deed of Trust, but they do not purport to memorialize an agreement that Ortiz would receive ownership and possession. Neither Ortiz nor the Bank Parties asserted that the Letters were an agreement to convey ownership and possession of the Property to Ortiz. Title and right to possession of the Property were conveyed to Ortiz when the trial court ruled in his favor on his wrongful-foreclosure claim, and the Bank Parties have not challenged this trial court ruling on appeal.

In addition, in Question 6, the trial court asked the jury to determine whether the Letters contain a "valid" agreement between Ortiz and the Bank or the Servicer. This question calls for a jury finding as to a question of law, which is beyond the province of the jury.[42] For this additional reason, the question was immaterial.

In sum, Question 6 was immaterial both because it should not have been submitted and because it calls for a legal determination.[43] The trial court did not err by impliedly granting Ortiz's motion to disregard the jury's finding in response to this question.[44]

**The trial court did not seek "to partially correct" an error in the Partial Summary Judgment by submitting Question 6 to the jury.**

According to the majority, after granting the Partial Summary Judgment based upon the conclusion that the Letters were unambiguous, the trial court (1) realized it had erred in reaching this conclusion, (2) set aside the Partial Summary Judgment, (3) sought to "partially correct this error" by submitting Question 6 to the jury, and (4) changed its ruling yet again after trial by reinstating the Partial Summary Judgment in the final judgment.[45] No oral or written rulings or actions of the trial court support any such findings.

The record does not reflect that the trial court set aside or vacated the Partial Summary Judgment. Nor does the record reflect that the trial court determined it had erred in granting the Partial Summary

---

41. *Id.*

42. *See Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 55 n. 9 (Tex.2008) (noting that the determination of an agreement's validity is a legal question); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003) (same); *In re Guggenheim Corporate Funding, LLC,* 380 S.W.3d 879, 886 (Tex.App.-Houston [14th Dist.] 2012, orig. proceeding) (same).

43. *See Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 787 (Tex.2008); *National Plan Adm'rs v. National Health Ins. Co.,* 235 S.W.3d 695, 703–04 (Tex.2007).

44. *See Ulico Cas. Co.,* 262 S.W.3d at 787; *National Plan Adm'rs,* 235 S.W.3d at 703–04.

45. *See ante* at pp. 880–82.

Judgment or that the trial court sought to "partially correct this error" by submitting Question 6 to the jury. Nor does the record show that the trial court reinstated its Partial Summary Judgment. The unambiguous language of the Partial Summary Judgment and of the trial court's final judgment, and a careful review of the entire record, show that the trial court never set aside or modified the Partial Summary Judgment. Instead, the trial court incorporated the Partial Summary Judgment unchanged into the final judgment, without having ever set aside the Partial Summary Judgment.

The majority infers that the trial court took these purported actions based upon the majority's conclusion that the trial court submitted the interpretation of the Letters to the jury in Question 6.[46] The majority cites a case for the proposition that a trial court's ruling that the interpretation of a contract should be submitted to the jury is an implicit holding that the contract is ambiguous.[47] But, notably, the trial court did not submit the interpretation of the Letters to the jury in Question 6. Indeed, the trial court did not instruct the jury that it was the jury's duty to interpret any part of the Letters. Nor did the trial court instruct the jury to decide the meaning of the Letters by determining the mutual intent of Ortiz and the Bank Parties when the Letters were signed. Instead, the trial court asked the jury whether the parties validly entered into an agreement that no party asserted had been made and of which there was no evidence.[48] Unsurprisingly, the jury did not find that the parties had validly entered into this agreement. The trial court did not submit the interpretation of the Letters to the jury in Question 6. Therefore, the premise underlying the majority's conclusion is fundamentally flawed. The trial court did not set aside the Partial Summary Judgment, nor did the trial court try to "partially correct" any alleged error in the Partial Summary Judgment by submitting Question 6 to the jury.

**The trial court granted summary judgment based upon a ground expressly stated in Ortiz's summary-judgment motion.**

Under their first issue, the Bank Parties argue that, in response to the Bank Parties' assertion that the Letters were not supported by consideration, the only issue Ortiz properly raised was that the Letters did not require consideration because the Letters are waivers. The Bank Parties assert that the trial court erred by granting partial summary judgment in Ortiz's favor based upon section 3.604, which the Bank Parties assert is a ground not stated in Ortiz's summary-judgment motion.

The Bank Parties are correct that Ortiz did not cite section 3.604 in his summary-judgment motion or response to the Bank Parties' motion. Ortiz's counsel first cited this statute to the trial court during oral argument on the summary-judgment motion, and then addressed section 3.604 further in supplemental briefing to the trial court. This court cannot affirm a summary judgment on a ground not stated in the summary-judgment motion.[49] But, in evaluating what grounds were raised in a summary-judgment motion, courts recog-

46. *See id.*

47. *See id.* (citing *Bowden v. Phillips Petroleum Co.,* 247 S.W.3d 690, 705 (Tex.2008)).

48. The majority states that, in response to Question 6, "the jury found that in executing the Letter Agreements, the Bank Parties did not agree to release Ortiz from any further

obligation to make payments on the Note if he received ownership and possession of the [Property]." *Ante* at p. 881. This statement is inaccurate because this is not the finding that the jury was asked to make in Question 6.

49. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993).

nize that summary-judgment grounds may be stated concisely, without detail and argument.[50] Thus, as a threshold matter, this court must determine whether, in his summary-judgment motion, Ortiz expressly identified a ground that was the basis of the trial court's partial summary judgment.

In his motion, Ortiz asserted that he is entitled to judgment as a matter of law as to the Bank Parties' claims on the Note because, under the plain language of the Letters, the Bank Parties "expressly renounced any and all further rights to assert claims against Ortiz." Courts analyzing a predecessor statute to section 3.604(a)(2) have concluded that, if the holder of a promissory note signs a writing in which the holder expressly renounces any claim on the note, this action is sufficient to discharge the note.[51] Under the unambiguous language of section 3.604(a), the Bank, without consideration, may discharge the obligation of Ortiz to pay the Note "by agreeing not to sue or otherwise renouncing rights against [Ortiz] by a

signed record."[52] In his motion, Ortiz also asserted that, in the Letters, the Bank Parties expressly waived all demands and claims regarding any obligations or liabilities of Ortiz on the Note. In his summary-judgment motion, Ortiz expressly identified a defensive theory that the Bank Parties waived their claims based upon the Note by signing the Letters—writings in which the Bank Parties expressly renounced their rights against Ortiz on the Note.[53] Significantly, Ortiz did not limit this summary-judgment ground to common-law waiver. Though Ortiz stated this ground concisely and without argument or citation to section 3.604, he sufficiently raised this ground in his motion.[54] In granting partial summary judgment on this ground, the trial court did not grant summary judgment on a ground not expressly stated in Ortiz's summary-judgment motion. The majority's narrow reading of the summary-judgment grounds elevates form over substance and ignores the legal principles embodied in the motion.[55]

**50.** *See Allen v. City of Baytown,* No. 01–09–00914–CV, 2011 WL 3820963, at *7 (Tex. App.-Houston [1st Dist.] Aug. 25, 2011, no pet.) (holding that traditional summary-judgment ground may be raised in a footnote that concisely states the ground without any argument or citation to legal authorities) (mem. op.); *Coleman v. Revak,* No. 01–07–00438–CV, 2008 WL 2466276, at *2 (Tex.App.-Houston [1st Dist.] June 19, 2008, no pet.) (stating that traditional summary-judgment ground may be raised by merely identifying a theory of liability or defense) (mem. op.); *Conquistador Petroleum, Inc. v. Chatham,* 899 S.W.2d 439, 441–42 (Tex.App.-Eastland 1995, writ denied) (holding that the following sentence, which lacked any citation to legal authority, was sufficient to expressly state a summary-judgment ground: "[defendant] moves for summary judgment against [plaintiff] on the affirmative defense of unenforceability pursuant to the Rule against Perpetuities."). *See also McConnell v. Southside Independent School District,* 858 S.W.2d 337, 340 (Tex. 1993) (stating in plurality opinion that sum-

mary-judgment grounds may be stated in the motion concisely, without detail or argument).

**51.** *See Hall,* 254 S.W. at 1037–39; *Shaffer,* 109 N.E.2d at 26; *Bagley,* 112 P.2d at 464–66.

**52.** Tex. Bus. & Comm.Code Ann. § 3.604(a).

**53.** *See Coleman,* 2008 WL 2466276, at *2.

**54.** *See Allen,* 2011 WL 3820963, at *7; *Coleman,* 2008 WL 2466276, at *2; *Conquistador Petroleum, Inc.,* 899 S.W.2d at 441–42.

**55.** When the Letters were signed, Ortiz's suit to enjoin the foreclosure sale was still pending, though the foreclosure sale already had occurred and Ortiz later dismissed this suit. There is no evidence that the Bank had filed any counterclaims in this suit when the Letters were signed. The majority asserts that, even though Ortiz asserted waiver as a summary-judgment ground, "the parties were al-

Because all of the arguments asserted by the Bank Parties under their first issue lack merit, this court should overrule this issue. This court also should sustain the Bank Parties' second issue and Ortiz's second cross-issue to the extent this cross-issue addresses the jury's damage finding as to Ortiz's trespass-to-realty claim against the Servicer. Thus, this court should modify the trial court's judgment (1) to delete any monetary recovery in favor of Ortiz and against the Bank, and (2) to award actual damages to Ortiz and against the Servicer in the amount of $74,500 rather than in the amount of $10,000.[56] After modifying the trial court's judgment in this way, this court should affirm the judgment.

## MANDAMUS

The Bank Parties assert judicial-foreclosure claims against Ortiz. On June 14, 2010, the trial court rendered an interlocutory take-nothing judgment against the Bank Parties on their claims arising from the Note secured by the deed-of-trust lien that provides the basis of the judicial-foreclosure claims. The parties' other claims were tried to the jury. After the jury's verdict, but before the trial court signed a judgment, the Bank Parties filed a notice of lis pendens regarding the Property, based upon the judicial-foreclosure claims. Shortly thereafter, Ortiz filed a motion to expunge the notice of lis pendens under Texas Property Code section 12.0071, a statute enacted by the Texas Legislature in 2009.[57] On the same day that it signed the final judgment ordering that the Bank Parties take nothing on their judicial-foreclosure claims, the trial court signed an order denying Ortiz's motion to expunge.

Ortiz then filed a petition for writ of mandamus in this court, asserting that the trial court abused its discretion by denying Ortiz's motion to expunge and by impliedly finding that the Bank Parties established by a preponderance of the evidence the probable validity of their judicial-foreclosure claims. This court requested a response from the Bank Parties, but, to date, they have not filed one.

A writ of mandamus generally will issue to correct a clear abuse of discretion when there is no adequate remedy at law.[58] But, if a trial court abuses its discretion by failing to cancel or expunge a notice of lis pendens, mandamus relief is available without any need to show that there is no adequate remedy at law.[59] A trial court clearly abuses its discretion if it reaches a

ready in litigation with one another [when the Letters were signed]; thus, Ortiz was asking the trial court, in effect, to treat the [Letters] as releases." *Ante* at p. 876. None of the cases cited by the majority support its assertion that a party in litigation cannot waive or renounce its rights against another party in the litigation but must release its rights. And, this proposition is contrary to the unambiguous language of section 3.604 and Texas cases. *See* Tex. Bus. & Comm.Code Ann. § 3.604; *ASI Technologies, Inc.*, 75 S.W.3d at 547–49.

**56.** This modification would increase the actual damages awarded to Ortiz against the Servicer by the amount of the trespass-to-realty damages found by the jury, less the $12,500 settlement credit.

**57.** *See* Act of May 21, 2009, 81st Leg., R.S., ch. 297, 2009 Tex. Gen. Laws 806, 806 (codi-

fied at Tex. Prop.Code Ann. § 12.0071 (West 2013)).

**58.** *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

**59.** *See Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex.1995) (per curiam). Thus, the only issue in the mandamus proceeding is whether the trial court abused its discretion by denying Ortiz's motion to expunge. *See id.* The majority relies upon the harmless-error rule applicable in civil appeals, but that rule applies only in civil appeals, not in mandamus proceedings. *See* Tex.R.App. 44.1(a)(1) (stating that "[n]o judgment may be *reversed on appeal* on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . .") (emphasis added); *London v. London*, 342 S.W.3d 768, 776 (Tex.App.-Houston [14th Dist.] 2011, no pet.).

decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.[60] With respect to the resolution of factual issues, this court may not substitute its judgment for that of the trial court, even if this court would have decided the issue differently.[61] Instead, this court may not overturn the trial court's decision on factual issues unless the trial court reasonably could have reached only the opposite decision.[62] With respect to the resolution of legal issues, however, the review is much less deferential.[63] The trial court has no discretion in determining what the law is or in applying the law to the facts.[64] Therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion.[65]

Texas Property Code section 12.0071, entitled "Motion to Expunge Lis Pendens," provides in pertinent part:

(a) A party to an action in connection with which a notice of lis pendens has been filed may:

(1) apply to the court to expunge the notice; and

(2) file evidence, including declarations, with the motion to expunge the notice.

(b) The court may:

(1) permit evidence on the motion to be received in the form of oral testimony; and

(2) make any orders the court considers just to provide for discovery by a party affected by the motion.

(c) The court shall order the notice of lis pendens expunged if the court determines that:

(1) the pleading on which the notice is based does not contain a real property claim;

(2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or

(3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d).

. . .

(e) The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows.[66]

Research reveals only one case in which the court interprets Property Code section 12.0071.[67] That case, however, deals with subsection (c)(1) of the statute rather than subsection (c)(2), which is at issue in the mandamus petition before the court today.[68] The parties have not cited and research has not revealed any case in which a court has construed or applied subsection (c)(2), and its interpretation appears to be an issue of first impression.

Under its plain meaning, this subsection marks a substantial change in the legal standard by which parties can seek expunction of notices of lis pendens.[69] Before enactment of Property Code section 12.0071, a party seeking cancellation or

---

60. *See Walker,* 827 S.W.2d at 839.

61. *Id.* at 839–40.

62. *See id.* at 840.

63. *Id.*

64. *Id.*

65. *Id.*

66. Tex. Prop.Code Ann. § 12.0071 (West 2013).

67. *See In re Cohen,* 340 S.W.3d 889 (Tex.App.-Houston [1st Dist.] 2011, orig. proceeding).

68. *See id.*

69. *See* Tex. Prop.Code Ann. § 12.0071(c).

expunction of a lis pendens notice had to show that the party filing the notice (the claimant) did not have pending claims that fell into one of the categories of claims contained in Property Code section 12.007(a).[70] This inquiry focused on the nature of the claims asserted and not on the merits or likelihood that the claims would be prosecuted successfully.[71] In enacting the new statute, the Legislature made a fundamental change by including language that requires consideration of the merits of the claim that forms the basis of the lis pendens. Under the plain meaning of Property Code section 12.0071, the trial court must grant a motion for expunction of a lis pendens notice if "the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim."[72] The new statute allows for discovery and evidentiary hearings regarding the evidence necessary to meet the claimant's burden of proof.[73] The language of Property Code section 12.0071(c) is substantially similar to language in California statutes.[74] In the Texas statute, "probable validity" is not defined, but in

the California statute, " '[p]robable validity,' with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim."[75]

The majority acknowledges that, in responding to Ortiz's motion to expunge, the Bank Parties had the burden of establishing by a preponderance of evidence the probable validity of their judicial-foreclosure claims.[76] But, instead of reviewing the Bank Parties' response in the trial court to determine whether the trial court abused its discretion in concluding that the Bank Parties satisfied this burden, the majority summarily concludes that the trial court did not abuse its discretion because this court is reversing the trial court's judgment on appeal.[77] In doing so, the majority fails to follow a fundamental rule of appellate practice which requires this court to review the trial court's ruling based upon the materials before the trial court when the trial court made the ruling at issue and not based upon other materials or upon events occurring after the trial court's ruling.[78] Thus, in a mandamus

**70.** *See* Tex. Prop.Code Ann. § 12.007(a) (West 2013).

**71.** *See id.; In re Collins,* 172 S.W.3d 287, 293–94 (Tex.App.-Fort Worth 2005, orig. proceeding).

**72.** Tex. Prop.Code Ann. § 12.0071(c)(2); *In re Cohen,* 340 S.W.3d at 892.

**73.** *See* Tex. Prop.Code Ann. § 12.0071(b).

**74.** *Compare* Tex. Prop.Code Ann. § 12.0071(c), *with* Cal. Civ. P.Code § 405.31 (West 2013) (stating that "the court shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim"); *id.* § 405.32 (West 2013) (stating that "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim").

**75.** Cal. Civ. P.Code § 405.3 (West 2013).

**76.** *See ante* at p. 887.

**77.** *See id.*

**78.** *See In re Bristol–Myers Squibb Co.,* 975 S.W.2d 601, 605 (Tex.1998) (noting that courts determine whether to grant mandamus relief based upon the record that was before the trial court when it made the ruling at issue); *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 556 n. 9 (Tex.1990) (stating that, in determining whether the trial court abused its discretion such that mandamus should issue, appellate courts do not consider evidence and subsequent events that were not before the trial court when it ruled); *Univ. of Tex. v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 429 (1961) (holding that appellate court, in determining correctness of a trial court ruling, does not consider events that occurred subsequent to the ruling unless they deprive the appellate court of jurisdiction); *Stephens*

proceeding such as this, in which subsequent matters (such as this court's opinion and judgment) do not deprive this court of jurisdiction, this court's review should focus on the state of affairs in the trial court at the time of the ruling.

The court's opinion and appellate judgment in today's case occurred after the trial court's denial of Ortiz's motion to expunge and were not before the trial court when it ruled. Accordingly, this court's opinion and judgment should not be considered in determining whether the trial court abused its discretion by concluding that the Bank Parties established by a preponderance of evidence the probable validity of their judicial-foreclosure claims. The majority incorrectly makes this determination based upon the outcome of the appeal rather than upon Ortiz's motion to expunge and the Bank Parties' response. In Property Code section 12.0071, the Legislature has provided that the trial court must grant a motion for expunction of a lis pendens notice if "the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim." [79] The Legislature has not provided an exception to this rule if an intermediate court of appeals reverses the trial court's take-nothing judgment on the real property claim and remands for a new trial.

## CONCLUSION

Words matter. Borrowers, lenders, and other parties who seek to resolve disputes through waivers of claims want to use language that a court will enforce by summary judgment; otherwise, they face unwanted transaction costs and the uncertainties of trial. If lenders are permitted to avoid summary judgment and pursue collection actions on unambiguously waived debt claims, waivers will hold little value for borrowers. Likewise, if courts applying the same interpretive principles do not grant summary judgment on unambiguous waivers of lender-liability claims, lenders will lose the ability to reliably settle those claims.

The language the majority finds ambiguous today is garden-variety waiver-and-release language, the sort used every day to settle disputes. Today's decision diminishes the chance for prompt enforcement of such unambiguous language through summary judgment, an unwelcome development that will tend to compromise the value and utility of the waiver and release in the public square. Instead of finding this waiver language ambiguous and sending the parties back to the trial court, this court should enforce the plain language of the Letters as written. By refusing to do so, the majority adds uncertainty and unpredictability to the law. The better course would be to hold the Bank to its unambiguous written word and thereby advance a jurisprudence that fosters a more predictable legal environment, reduces unnecessary litigation, and honors the rule-of-law values that make our justice system strong.

County v. J.N. McCammon, Inc., 122 Tex. 148, 52 S.W.2d 53, 55 (1932) (stating that "[w]hen an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made"); Keck v. First City Nat. Bank of Houston, 731 S.W.2d 699, 700 (Tex.App.-Houston [14th Dist.] 1987, no writ) (concluding that, in reviewing a trial court ruling, it is improper for an appellate court to consider pleadings, actions by the parties, or actions by other courts taking place after the trial court rendered the ruling at issue, unless the subsequent matters deprive the appellate court of jurisdiction).

79. Tex. Prop.Code Ann. § 12.0071(c)(2); In re Cohen, 340 S.W.3d at 892.